Casey, Ch. J.,
delivered the opinion of the court:
On the 5th day of April, 1864, the corporation claimant entered into a charter-party with Captain F. J. Crilly, an assistant quartermaster of the army, on behalf of the United States, for the hire of their steamer, called the “ Thorn,” to the United States government. She was to be manned, victualed, and appareled by the owners; the United States to furnish fuel. The war risk was to be borne bytbe United States; tbe marine risk by the owners. The charter-party was for thirty days and as much longer as her services might be required. And she was to be employed in such service as the United States might direct.
The hire of the vessel was to be $150 per day for each and every day said vessel should be employed. It also contained the following clauses:
“The said vessel is valued and appraised at the sum of $40,000, and should she be retained so long in the service of the United States that the money paid and due on account of said charter (deducting therefrom the actual cost of running and keeping in repair the said vessel during the said time, together with a net profit of 33 per cent, per annum on said appraised value) shall be equal to said appraised value, then the said vessel shall become the property of the United States without further payment, except such sum as ma.y then be due on account of the services of the said vessel, rendered under the said vessel charter.
“And further, if at any time during the continuance of this charter, the United States shall elect to purchase the said vessel, then they shall have the right to take her at the appraised value at the date of charter, and all money then already paid and due on account' of said charter (deducting therefrom the actual cost of running and keeping in repair the said vessel *275 during the said time, together with a net profit of 33 per cent, per annum on the original appraised value) shall apply on account of the said purchase.”
The vessel entered upon the stipulated service at the date of the charter-party, and continued so employed until some day in March, 1865, when she was blown up and destroyed in Cape Fear River, North Carolina, by a torpedo placed there by the insurgent forces.
She having perished by a “war risk,” within the meaning of the charter-party, the owners applied to the Quartermaster’s Department for the appraised value of the vessel, and also to the Third Auditor. The latter made the following statement, and certified the balance due, and which was approved by the Second Comptroller:
“ By valuation, as per charter.1.... $40, 000 00
By 33 per cent, per annum from 12 m. April 5, ’64, to 4 p. m. March 4, ’65,10 27-30 4-24 months.. 11,996 11
By running expenses 11 months, at $2,100 per month.. 23,100 00
75,096 11
To amount received from U. S. for services from 12 m. April 15, ’64, to March 4, ’65, 4 p. m., being 333 6-24 days, at $150. $49, 975 00
Less 23 5-24 days lost. 3,481 25
- 46,493 75
Balance due. 28, 602 36”
This sum of $28,602 36 was paid to the claimants, and the balance of their claim, amounting to $11,397 64, was rejected, and for which amount this suit is now prosecuted. No question was raised on the hearing as to the accuracy of the account as stated, but the questions turned entirely upon the construction to be given to the accruing clauses of the charter-party above set forth.
In the recent case of Spear & Lwng for the loss of the steamer Maple Leaf we gave a construction, to similar clauses contained in the charter-party under which that vessel was employed when lost. We there held that the United States, under such *276 a charter-party, became the equitable owner of the vessel to the extent of the sum earned over and above the expenses and profits stipulated for; and that to the extent of such sum the owners had received so much payment on the price of the vessel; and that whether she was taken by the United States, under the option given to purehase at any time, or perished by one of the perils against which the United States engaged to insure, this accruing clause was equally operative. It was only the balance due on the price of the vessel which the original owner could claim, and not the amount of the valuation. And for our views more at length we refer to the opinion in that case. The claimants have received the balance. And as the view which we take of these clauses precludes them from any further recovery in the case, the judgment must be that the claimants take nothing by their petition, that the defendants go thereof without day, and the same be dismissed.